7402

## AUTEN v. CATAWBA POWER CO.

1. ISSUES.—It is not error to refuse to transfer case from Calendar 1 to Calendar 2 for trial of equity issues before trial of legal issues.
2. IBID.—JUDGMENT.—The order here made as to stay of entry of judgment until judgment on equity issues, held to be proper under the circumstances as protecting the rights of both parties.
3. DAMAGES—FLOODING LANDS—NUISANCE—NEW TRIAL.—In an action for damages for flooding lands and to enjoin the nuisance, error in declining to instruct jury whether after verdict for plaintiff he could recover anything more, is cured by order of new trial *nisi* in this Court on condition that plaintiff agree on the record to accept verdict in full of all damages, past and future.
4. WATER COURSES—CHARGE.—There being no issue raised by the pleadings or evidence as to the right of a riparian owner to the fall below his lands, refusal to instruct the jury in regard thereto is not error.
5. IBID.—DAMS—FRESHETS.—THE REQUESTS that, if a riparian owner so construct his dam as to leave a reasonable margin of fall for ordinary freshets, or negligently refuses to increase such margin after learning the margin was insufficient for the greatest ordinary freshets, he is not responsible to an owner above him for damages as a remote cause only, if the proximate cause was deposits in the stream above the back water, was substantially covered in the charge.
6. DAMAGES.—There being no issue here as to damages which plaintiff could have avoided by any act on his part, it was proper to refuse request that he should have lessened his loss by drainage and cultivation.

Before DANTZLER, J., York, April, 1907.    Modified.

Action by W. W. Auten against the Catawba Power Co. From judgment for plaintiff, defendant appeals.

*Messrs. Wilson & Wilson, Witherspoon & Spencers, Thomas F. McDow, Frank I. Osborne* and *R. G. Lucas,* for appellant.

*Messrs. Finley & Jennings* and *Wm. B. McCaw,* contra.

The opinion in this case was filed on July 26th, but remittur stayed on petition for rehearing until

December 2, 1909.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   This is an action   for   damages, alleged to have been sustained by the plaintiff, by reason of the defendant's dam across the Catawba River.

The complaint alleges that the plaintiff is the owner of the tract of land described in the complaint, situate on Allison's Creek which flows into the Catawba River; that the defendant maintains the dam across the river below the plaintiff's land, to the height of about thirty feet, whereby it has backed the water of Catawba River and Allison's Creek, for miles up the said river and creek, thereby inflicting injuries to the land and health of the plaintiff and his family; that the statute under which the dam was erected is unconstitutional, and that the acts of the defendant constitute a taking of the plaintiff's property.

The complaint demands damages to the amount of eight thousand dollars, and also prays for an injunction restraining the defendant from maintaining and using said dam.

The following statement is set out in the record : "On the 9th day of April, 1907, the defendant moved the Court, on notice duly served, to transfer the case from Calendar 1 to Calendar 2, for trial by the Court.   On the 19th day of April, 1907, an order was made refusing the motion.   From said order notice of intention to appeal and exceptions were duly served, but no return was filed, nor was an order of stay applied for.

"On the           day of April, 1907, the trial of the legal issues was commenced before the Court and jury, the equitable issues having been reserved for trial by the Court. At the conclusion of plaintiff's testimony, defendant moved for a nonsuit on various grounds.   The motion was granted as to punitive damages, but was refused as to all the other grounds.   On the 26th day of April, 1907, the jury rendered a verdict for $8,650.00 for plaintiff.   Before rendition the jury came into the court-room and asked the pre-

siding Judge as to whether, after the verdict in plaintiff's favor, the plaintiff could ever recover anything more, but his Honor declined to further instruct them. During the term defendant moved for a new trial on various grounds, one of which was that the verdict was excessive. On the 27th day of April, 1907, an order was made reserving the motion as to excessiveness, but refusing it as to the other grounds. During the term defendant made a motion to stay entry of judgment upon the verdict, even after the order as to excessiveness should be made, until the determination of the equitable issues presented by the pleadings. On the 29th day of April, 1907, an order was made refusing said motion. On the 7th day of May, 1907, notice of intention to appeal from said order was duly served. On the 12th day of October, 1907, an order was filed granting a new trial, unless plaintiff should within a given time reduce the verdict to $2,000.00. The verdict was reduced accordingly, and on the 29th day of October, 1907, the plaintiff regularly entered up judgment against the defendant for $2,208.85, including costs."

The defendant appealed from said order and judgment.

1 The first assignment of error is because his Honor, the presiding Judge, refused the defendant's motion to transfer the case from Calendar 1 to Calendar 2.

The case of *Bratton* v. *Catawba Power Co.,* 80 S. C., 260, 60 S. E., 673, is conclusive of this question, and shows that this exception cannot be sustained.

The appellant next contends that there was error in refusing to stay the entry of judgment on the verdict.

On hearing the motion to stay entry of judgment the presiding Judge made an order "that when said ground (for new trial) shall be passed upon, and when the order of reference of the equitable issues shall be made, 2 as also provided for in said order, the defendant will be entitled to an order staying the execution of

26—84

judgment on said verdict until the further order of the Court, but said further order not to be made before final judgment upon said equitable issues shall have been rendered."

This order protected the rights of both parties to the action, and was proper under the circumstances.

The next error assigned is because the Circuit Judge refused to instruct the jury upon their return to the court-room, at their request, for further information.

This question arose as follows: "Before rendition of the verdict the jury came into the court-room and asked the presiding Judge as to whether, *after the verdict in plaintiff's favor,* the plaintiff could ever recover anything more, but his Honor declined further to instruct them." (Italics ours.)

The presiding Judge had charged the jury as follows: "I charge you as a proposition of law that you are limited in your consideration, if you conclude the plaintiff is entitled to damages to the period mentioned in his complaint, that is, 1904, from the erection of the dam to the time of the commencement of this action."

The information which the jury desired related to a question entirely different from that which they had under consideration. There was no intimation on their part that they did not clearly understand the law, as charged by the Circuit Judge.

Under these circumstances we fail to discover any error prejudicial to the rights of the appellant.

The next question that will be considered is raised by the following exception: "Because his Honor, the Circuit Judge, refused to charge the defendant's first request, to wit: 'That a riparian owner's water power right, as against such an owner above, immediate or mediate, is to so construct his dam as to give him all the fall between his upper line and the other owner's lower line, as the water is accustomed to flow.' The error being that the

jury were thus left to conclude that plaintiff, as a mediate owner above, was not only entitled to his own fall, but to all the fall of all the owners between him and defendant's dam."

There was no question raised by the pleadings as to the rights of the parties to the water power of the stream. The request was, therefore, properly refused.

We proceed to the consideration of the question presented by the following exception: "Because his Honor, the presiding Judge, refused to charge the defendant's third request, to wit: 'That when a riparian owner so constructs his dam as to leave, in view of all the surrounding circumstances, a reasonable margin of his fall for ordinary freshets, he is not responsible for any injuries to such an owner above him, mediate or immediate, resulting from the dam as a remote cause only, if the proximate cause was deposits in the running stream above the back water.' The error being that the jury were thus left to conclude that the defendant would be liable to the plaintiff for damages, if the proximate cause was deposits of sand, from the running water, above the back water, or anything else, and if the erection of the dam was only the remote cause of the injury suffered by plaintiff."

In his general charge his Honor, the presiding Judge, thus instructed the jury:

"Now, the plaintiff, as all plaintiffs are, is limited and restricted in the recovery to the injury set forth in the complaint from the causes alleged to have produced the injury. Now, if the plaintiff in this action has sustained damages, and the damages have resulted not from the construction, the erection, of the dam, but from other causes, then there can be no recovery, even though plaintiff has been damaged in his personal and in his property rights. Yet, if such damage resulted from a cause or causes other than the erection of the dam, there can be no recovery, but if the plaintiff has sustained damages, any damage or damages as

related and set forth in his complaint, and such damage or damages as or have resulted from the erection of the dam, by the defendant, then the plaintiff is entitled to recover from the defendant company such damages as he may be entitled to by virtue of the erection of the dam. The defendant had a perfect right—the defendant had authority under this statute to erect the dam. The only question before you, gentlemen of the jury, is this: Whether or not the defendant by the erection of the dam has caused damage or damages to the plaintiff in any of the respects set forth in his complaint. Was the erection of the dam the real cause of the injury or injuries to the plaintiff, if there was injury, if you find he was injured? What was the real cause? If freshets or any other causes have led to injury, have caused the injury inflicted, and the erection of the dam did not cause it, there can be no recovery, and if the injuries complained of, or any of them, were caused by the act of God, and not by the erection of the dam, there can be no recovery."

It will thus be seen that the proposition embodied in the request was practically submitted to the jury.

The next exception that will be considered is as follows: "Because his Honor, the Circuit Judge, refused to charge the defendant's fifth request, to wit: 'That when a riparian owner so constructs his dam as to leave, in view of all the surrounding circumstances, a reasonable margin of his fall for ordinary freshets, he is not responsible for any injuries to such an owner above him, mediate or immediate, unless he has been negligent in failing to increase the margin of his fall after learning that the margin already allowed was insufficient for the greatest of ordinary freshets.' The error being that the jury were thus left to conclude that the defendant, in building the dam, was responsible to the owner above for the injurious results of extraordinary freshets, however careful defendant may have been to provide against the same. And in this connection, and on

the same ground, error in charging, at plaintiff's request: 'If one uses his own lands for the prosecution of some business from which injury to his neighbor would either necessarily or probably ensue, he is liable if such injury thus result, even though he may have used reasonable care in the prosecution of such business, and in this connection I charge you further, in general, if a voluntary act, lawful in itself, may naturally result in the injury of another, or the violation of his legal rights, the actor must at his peril see to it that such injury or such violation does not follow, or he must expect to respond in damages therefor. and this is true, regardless of the motive or the degree of care with which the act is performed.' "

It will be observed that the exception raises but a single question, and the proposition for which the appellant contended was practically submitted to the jury, as will be seen by reference to that portion of the charge. which we have just quoted, in considering the last mentioned exception.

The next exception we will consider is as follows: "Because his Honor, the Circuit Judge, refused to consider the defendant's eighth request, to wit: 'That, in connection with loss of income, if any, if plaintiff could reasonably have lessened such loss by properly draining any of his land and by cultivating same, it was his duty to have done so, and what he might reasonably have saved thereby must be deducted from the rental value in estimating damages, if any, under that head.' The error being that the jury were thus left to conclude that the plaintiff owed no duty to the defendant to lessen the injury, even if he could do so without hurt to himself."

It neither appears from the pleadings, nor from the testimony, that the plaintiff was seeking to recover damages that could have been avoided by any act on his part. The request was, therefore, properly refused.

There are other exceptions which we have not considered specifically, as they either raise, in different form, questions

already disposed of, or are clearly untenable, when considered in connection with the entire charge.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS, *dissenting:* The record contains this statement: "Before rendition the jury came into the court-room and asked the presiding Judge whether, after the verdict in plaintiff's favor, the plaintiff could ever recover anything more, but his Honor declined to further instruct them." It is true, the presiding Judge, in his charge, had instructed the jury. "I charge you as a proposition of law that you are limited in your consideration, if you conclude that the plaintiff is entitled to damages, you are limited in your consideration as to the kind of damages plaintiff is entitled to, to the period mentioned in his complaint, that is, 1904, from the erection of the dam to the time of the commencement of this action—what is the date? The 27th of September, 1905. If you find the plaintiff is entitled to recover, you are limited to that period. Now, when you come to the consideration, it is alleged here the destruction of the crops of 1904 and 1905, and further alleged injuries to the plaintiff in his person, to his family, and to his property." But the request of the jury for further instructions showed clearly that they did not understand the charge on this subject. Within certain limits the trial Judge may exercise his discretion in giving or refusing to give additional instructions in response to an inquiry from the jury. But where the inquiry from the jury appears to be made in good faith, and refers to a material issue of law, it is the right of the jury to submit it, and the duty of the Judge to answer it. It is almost universally held that it is not improper to answer such questions from the jury, and the following authorities lay down the rule that it is the duty of the trial Judge to answer them: 11 Enc. Pl. & Pr., 284; *Bank* v. *McWilliams,* 2 J. J. Marsh

(Ky.), 253; *Lumsden* v. *Chicago etc. R. R. Co.* (Tex.), 73 S. W., 428; *King* v. *State* (Ga.), 12 S. E., 943.

Here there was nothing to indicate that the jury, in asking for further instructions, were not actuated by a sincere desire to reach a just verdict, and their inquiry bore directly on one of the vital issues made by the pleadings. The importance of the inquiry becomes still more apparent, when it is considered that it must have been quite difficult for the jury to draw the exact line between those injuries to the plaintiff set out in the complaint and the evidence, as inflicted up to the commencement of the action, and those which were continuing and permanent. The evidence as to the extent and nature of the damage was conflicting. If the jury had clearly understood the view of the presiding Judge, that their verdict must be limited to damages accruing up to the commencement of the action, and that this would not be a bar to a suit for damages accruing thereafter, their verdict might have been for a smaller sum. As it is, there is no way for determining whether the verdict is for all damages or only for damages which had accrued up to the commencement of the action. This result of the refusal of the Circuit Judge further to instruct the jury is highly prejudicial to the defendant; for if the verdict covers future damages, it should be available to the defendant as a complete defense to the demand for injunction or any other action for damages. If the verdict stands, the plaintiff may collect a verdict intended as a complete compensation for all his damages, and yet obtain an injunction or another verdict for damages. Thus the error of refusing to respond to the request of the jury may subject the defendant to a double recovery for the same cause of action.

I concur in overruling the other exceptions, but, with respect to subdivision e of the third exception, there is a consideration which it is important to state. The defendant thus sets out as error:

"Defendant's fifth request to charge, to wit: 'That when a riparian owner so constructs his dam as to leave, in view of all the surrounding circumstances, a reasonable margin of his fall for ordinary freshets, he is not responsible for any injuries to such an owner above him, mediate or immediate, unless he has been negligent in failing to increase the margin of his fall after learning that the margin already allowed was insufficient for the greatest of ordinary freshets.' The error being that the jury were thus left to conclude that the defendant in building the dam was responsible to the owner above for the injurious results of extraordinary freshets, however careful defendant may have been to provide against the same. And in this connection, and on the same ground, error in charging, at plaintiff's request: 'If one uses his own lands for the prosecution of some business from which injury to his neighbor would either necessarily or probably ensue, he is liable if such injury thus result, even though he may have used reasonable care in the prosecution of such business, and in this connection I charge you further, in general, if a voluntary act, lawful in itself, may naturally result in the injury of another or the violation of his legal rights, the actor must at his peril see to it that such injury or such violation does not follow, or he must expect to respond in damages therefor, and this is true, regardless of the motive or the degree of care with which the act is performed.' "

The owner of a water power on a stream has the right to use it, subject to his duty to guard against injury to others, but this duty is not limited to safeguards against ordinary freshets, as the defendant contends. The refusal of the Court to charge the request above quoted, and the instruction which it did give, are in accord with *Hunter* v. *Pelham Mills,* 52 S. C., 279, 29 S. E., 727, and *Jones* v. *Ry. Co.,* 67 S. C., 181, 197, 45 S. E., 188. In the latter case the principle is thus stated. "Besides, it is not sufficient to exempt the defendant from liability that the

damage should have come from its diversion of the water at 'unusual heights of floods.' The rule is that whoever proposes to build a bridge over a stream, before placing his piers or other erection tending in any degree to dam the water or divert it from its natural flow, must study the country through which it flows, its usual freshets, and occasional great floods, which are not usual, but which experience teaches may occur at any time, and use reasonable care and skill to avoid producing or increasing damage from these sources. He is not required to anticipate and use precautions against extraordinary or unprecedented floods. Whether a flood falls within one or the other of these classes is a question of fact, and where there is any conflicting evidence the issue can only be decided by a jury."

December 2, 1909. PER CURIAM: This is a petition to the Court for a rehearing in the above stated case, on the several grounds therein mentioned.

The only ground which has given us any serious trouble is that which assigns error in overruling the exception based upon the refusal of his Honor, the Circuit Judge, to give the jury further instructions as to the damages recoverable, when requested by the foreman.

In view of the pleadings, the testimony, and the amount of the verdict, we have deemed it advisable to grant a new trial, unless within twenty days the plaintiff or his attorneys shall consent, upon the record, that the verdict rendered by the jury shall be in satisfaction of all damages, both past and future, but that if the plaintiff complies with this condition, the judgment be affirmed, and it is so adjudged, and the judgment heretofore rendered modified accordingly.